UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANNE SOLOMON-SHRAWDER, et al., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CARDIONET, INC., et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 09-3894 <br> **(Consolidated)** <br><br> <u>CLASS ACTION</u> <br><br> MEMORANDUM IN SUPPORT OF THE MOTION OF CITY OF ANN ARBOR EMPLOYEES' RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL |

## I. PRELIMINARY STATEMENT

Presently pending before this Court is a consolidated securities class action lawsuit (the "Action") brought on behalf of all purchasers of the common stock of CardioNet, Inc. ("CardioNet" or the "Company") between April 30, 2009 and July 10, 2009 (the "Class Period"), against CardioNet and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("1934 Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78(u)-4, *et seq.*), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Institutional Investor City of Ann Arbor Employees' Retirement System ("City of Ann Arbor") hereby moves this Court for an Order to: (i) appoint City of Ann Arbor as Lead Plaintiff in the Action under §21D(a)(3)(B) of the Exchange Act; and (ii) approve City of Ann Arbor's selection of the law firm of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") to serve as Lead Counsel and the Law Offices Bernard M. Gross, P.C., to serve as Liaison Counsel.

This motion is made on the grounds that City of Ann Arbor is the most adequate plaintiff, as defined by the PSLRA. City of Ann Arbor is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 20, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs). Moreover, as an institutional investor, City of Ann Arbor is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the Class.

During the Class Period, City of Ann Arbor incurred a $68,812.20 loss on its transactions in CardioNet shares. *See* Gross Decl., Ex. B.[1] To the best of its knowledge, this is the greatest loss

---

[1] References to the "Gross Decl., Ex. ___" are to the exhibits attached to the accompanying Declaration of Deborah R. Gross dated October 26, 2009, and submitted herewith.

sustained by any moving Class member or Class member group who has brought suit or filed an application to serve as lead plaintiff in this Action. In addition, City of Ann Arbor, for the purposes of this motion, adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class.

## II. FACTUAL BACKGROUND[2]

CardioNet, incorporated in March 1994, provides continuous, real-time ambulatory outpatient management solutions for monitoring relevant and timely clinical information regarding an individual's health. The Company has developed an integrated patient monitoring platform that incorporates a wireless data transmission network, internally developed software, FDA-cleared algorithms and medical devices, and an around-the-clock digital monitoring service center. Its initial efforts are focused on the diagnosis and monitoring of cardiac arrhythmias, or heart rhythm disorders, through its core Mobile Cardiac Outpatient Telemetry ("MCOT™") device and Holter services. The MCOT™ enables heartbeat-by-heartbeat, ECG monitoring, analysis and response, at home or away, 24/7/365. CardioNet is headquartered in Conshohocken, Pennsylvania.

The complaint charges CardioNet and certain of its officers and directors with violations of the Exchange Act. According to the complaint, during the Class Period, defendants issued materially false and misleading statements concerning the Company's MCOT™ device, including making aggressive projections for 2009 through 2011. Defendants further downplayed the potential for Pennsylvania's Medicare carrier, Highmark Medicare Services ("Highmark"), to reduce its reimbursement rate for the Company's MCOT™ device. As a result of defendants' false and

---

[2] These facts are drawn from the allegations in the action entitled *Altshuler, et al v. CardioNet, Inc., et al*, Civil Action No. 09-cv-4198 (the "*Altshuler* Action").

misleading statements, CardioNet stock traded at artificially inflated prices during the Class Period, reaching a high of $19.60 per share on May 19, 2009.

On June 30, 2009, CardioNet announced that it was lowering its full year 2009 guidance and withdrawing its 2010 and 2011 guidance based on lower-than-anticipated commercial reimbursement rates for its MCOT™ device. On this news, CardioNet's shares plunged $6.75 per share from $16.32 per share on June 30, 2009, to close at $9.57 per share on July 1, 2009, a one-day decline of 41% per share on volume of 23.4 million shares, over 24 times the average three-month daily average.

Then, on July 12, 2009, CardioNet announced that it was withdrawing its full year 2009 guidance based on a drastic reduction in its reimbursement rate by Highmark. As a result, CardioNet's stock plummeted $2.96 per share to close at $5.87 per share on July 13, 2009 – a one-day decline of 34% on volume of 11.8 million shares, over seven times the average three-month daily average.

As a result of defendants' false statements and omissions, CardioNet's stock traded at artificially inflated prices during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down more than 70% from their Class Period high.

## III.   ARGUMENT

### A.   City of Ann Arbor Should Be Appointed Lead Plaintiff

#### 1.   The Procedure Required by the PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as

lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff in the *Altshuler* Action caused the first notice regarding the pendency of this Action to be published on *GlobeNewswire, Inc.*, a national, business-oriented newswire service, on August 27, 2009. *See* Gross Decl., Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class who the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice…
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### B. City of Ann Arbor Satisfies the "Lead Plaintiff" Requirements of the Exchange Act

#### 1. City of Ann Arbor Has Complied with the Exchange Act and Should Be Appointed Lead Plaintiff

The time period in which Class members may move to be appointed lead plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on October 26, 2009. Pursuant to the provisions of the PSLRA, and within the requisite time frame after publication of the required notice on August

- 4 -

27, 2009, City of Ann Arbor timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the Class.

City of Ann Arbor has duly signed and filed a certification stating that it is willing to serve as the representative party on behalf of the Class. *See* Gross Decl., Ex. C. In addition, City of Ann Arbor has selected and retained competent counsel to represent it and the Class. *See* Gross Decl., Exs. D-E. Accordingly, City of Ann Arbor has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and approval of selection of Lead and Liaison Counsel as set forth herein, considered and approved by the Court.

### a. City of Ann Arbor Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, who typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. City of Ann Arbor, as an institutional investor, is precisely the type of Lead Plaintiff Congress envisioned when it passed the PSLRA. *See id.*

### b. City of Ann Arbor Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed certification, *see* Gross Decl., Ex. C, City of Ann Arbor incurred a $68,812.20 loss on its

transactions in CardioNet shares. *See* Gross Decl., Ex. B. City of Ann Arbor thus has a significant financial interest in this case. Therefore, City of Ann Arbor satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this Action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### c. City of Ann Arbor Otherwise Satisfies Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Lax v. First Merchants Acceptance Corp.*, No. 97-C-2175, 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 6, 1997). City of Ann Arbor satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be

no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact"). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Impath*, 2004 U.S. Dist. LEXIS 13898, at *18.

City of Ann Arbor satisfies this requirement because, just like all other class members, it: (1) purchased CardioNet shares during the Class Period; (2) was adversely affected by defendants' false and misleading statements; and (3) suffered damages as a result thereof. Thus, City of Ann Arbor's claims are typical of those of other Class members because its claims and the claims of other Class members arise out of the same course of events. Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of City of Ann Arbor to represent the Class to the existence of any conflicts between the interests of City of Ann Arbor and the members of the Class. The Court must evaluate adequacy of representation by considering: (i) whether the Class representatives' claims conflict with those of the Class; and (ii) whether Class counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Global Crossing Sec. & ERISA Litig.*, No. 02 MD 1472 (GEL), 2004 U.S. Dist. LEXIS 23946, at *53 (S.D.N.Y. Nov. 23, 2004).

Here, City of Ann Arbor is an adequate representative of the Class. As evidenced by the injuries suffered by City of Ann Arbor and the Class, the interests of City of Ann Arbor are clearly aligned with the members of the Class, and there is no evidence of any antagonism between City of Ann Arbor's interests and those of the other members of the Class. Further, City of Ann Arbor has

taken significant steps that demonstrate it will protect the interests of the Class: it has retained competent and experienced counsel to prosecute these claims. In addition, as shown below, City of Ann Arbor's proposed Lead and Liaison Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, City of Ann Arbor *prima facie* satisfy the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### C. The Court Should Approve City of Ann Arbor's Choice of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. In that regard, City of Ann Arbor has selected the law firm of Coughlin Stoia as Lead Counsel, a firm which has substantial experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re Enron Corp. Sec. Litig.*, No. H-01-3624, 2005 U.S. Dist. LEXIS 39867 (S.D. Tex. Dec. 22, 2005), in which Coughlin Stoia has obtained recoveries to date which represent the largest recovery ever obtained in a shareholder class action. *See* Gross Decl., Ex. D. Specifically, the court in *Enron* stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, H-01-3624, 2006 U.S. Dist. LEXIS 43146, at *77 (S.D. Tex. June 5, 2006).

Accordingly, the Court should approve City of Ann Arbor's selection of counsel.

### IV. CONCLUSION

For all the foregoing reasons, City of Ann Arbor respectfully requests that the Court: (i) appoint City of Ann Arbor as Lead Plaintiff in the Action; (ii) approve its selection of Lead and

Liaison Counsel as set forth herein; and (iii) grant such other relief as the Court may deem just and proper.

DATED: October 26, 2009

Respectfully submitted,
LAW OFFICES OF BERNARD M.
 GROSS, P.C.
DEBORAH R. GROSS

/s/ Deborah R. Gross-DG639
DEBORAH R. GROSS

Wanamaker Bldg., Suite 450
100 Penn Square East
Philadelphia, PA 19107
Telephone: 215/561-3600
215/561-3000 (fax)

*[Proposed] Liaison Counsel*

COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
ANNE L. BOX
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

*[Proposed] Lead Counsel for Plaintiffs*

VANOVERBEKE MICHAUD &
 TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)

*Additional Counsel for Plaintiff*